**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| FANTASTIC SAMS FRANCHISE CORPORATION, | ) ) ) ) ) ) | |
| Plaintiff, | | |
| | | Case No. 2:24-cv-2867-JPM-atc |
| v. | ) ) ) | |
| DONMARCOS, LLC, DONALD HENSON, and MARK PATTON, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Before the Court is a Motion for Attorneys' Fees, filed by Plaintiff Fantastic Sams Franchise Corporation ("Plaintiff" or "Fantastic Sams") on January 6, 2025. (ECF No. 32.) For the reasons below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

Plaintiff filed its Complaint against Defendants DonMarcos, LLC ("DonMarcos"), Donald Henson ("Henson"), and Mark Patton ("Patton") (collectively, "Defendants") on November 11, 2024. (ECF No. 1.) Plaintiff asserted violations of the Lanham Act, breach of contract, and common law unfair competition. (Id. at PageID 14–18.)

The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C §§ 1331, 1338(a). (Id. at PageID 4.)

A.       **Factual Background**

i. *The Parties and the License Agreement*

Plaintiff is a business which franchises Fantastic Sams salons to franchisees. (Id. at PageID 4.)  Plaintiff owns the following marks and related logos: Fantastic Sams Cut and Color, Registration Nos. 4,924,187, 4,924,189, 4,924,190; and F/S, Registration Nos. 5,019,015; 5,087,286. (Id. at PageID 7.)

Franchisees "are licensed to use Fantastic Sams trade names, service marks, and trademarks and to operate under the Fantastic Sams franchise system (the 'Fantastic Sams System' or 'System')." (Id.)  This System includes "using specially designed spaces with specific equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information." (Id. (citing ECF No. 1-2 at PageID 28).)  Within a franchisee relationship, Plaintiff provides its franchisees with a manual, and conducts periodic training sessions, on the details of the System. (Id. at PageID 5.)

The relationship between Plaintiff and its franchisees is governed by a franchise agreement. (Id. at PageID 6.)  Each franchise agreement contains both an "in-term covenant" and a "post-term covenant." (Id.)  The  "in-term covenant" is an agreement by the franchisee "not to be involved in any business that offers hair cutting, hair coloring, and/or hair care services and/or related products during the term of their franchise agreement." (Id.)  The "post-term covenant" is the same agreement, but for two years after the termination of the agreement, within a five mile radius of the franchised salon. (Id.)

On June 17, 2024, third party MACALLS, LLC and DonMarcos entered into a Salon License Renewal Agreement (the "License Agreement"). (Id. at PageID 8 (citing ECF No. 1-2).)

2

The License Agreement, which was later assigned to Plaintiff, allowed DonMarcos the right to use the Fantastic Sams system until June 17, 2024.  (Id.)  DonMarcos operated Salon #10332.  (Id.)

As part of the License Agreement, DonMarcos was required to pay a weekly licensing fee ($292.64), a weekly national advertising fee ($135.46), and contributions to a regional advertising fund (variable).  (Id. at PageID 9.)  Non-payment would be considered material breach, as per the License Agreement.  (Id.)  In the event of the Agreement's termination, DonMarcos would be required to, among other things, "immediately cease using the Marks, trade dress, business format, signs, structures and forms of advertising indicative of the Fantastic Sams System and Fantastic Sams products."  (Id. at PageID 10 (citing ECF No. 1-2 at PageID 46–47).)

*ii.  DonMarcos' Default, Arbitration, and Continued Use of Plaintiff's Marks*

On February 14, 2024, Plaintiff informed DonMarcos the License Agreement was terminated after DonMarcos failed to make its weekly payments.  (Id.)

On February 23, 2024, Plaintiff initiated arbitration against Defendants, seeking final termination of the License Agreement, money damages, and enforcement of the post-term covenant.  (Id. at PageID 11.)  Defendants did not participate.  (Id.)  The arbitrator found Plaintiff properly terminated the License Agreement and ordered Defendants to pay awards in totaling $70,309.74.  (Id. (citing ECF No. 1-3).)  The arbitrator also ordered Defendants to comply with the post-term covenant.  (Id.)

On December 12, 2024, the Desoto County, Mississippi Circuit Court confirmed the arbitration award in all respects.  (See ECF No. 27-1.)

Defendants have continued to use Plaintiff's marks.  (ECF No. 1 at PageID 12.)

3

B.    **Procedural Background**

On November 11, 2024, Plaintiff filed its Complaint in this Court.  (ECF No. 1.)  The next

day, it moved for a preliminary injunction.  (ECF No. 8.)

Defendants, however, failed to appear in the case.  (See ECF Nos. 26, 31.)  On December

9, 2024, Plaintiff moved for entry of default, which the Clerk of Court granted.  (ECF No. 26.)  On

December 16, 2024, Plaintiff moved for default judgment.  (ECF No. 29.)

On December 17, 2024, the Court held a hearing on the preliminary injunction motion.

(ECF No. 30 (Minute Entry)).  At the hearing, Plaintiff argued, given its motion for default

judgment, it was entitled to a permanent injunction, enhanced damages, and attorneys' fees.  (See

id.)  The same day, the Court granted Plaintiff's motion for default judgment and permanent

injunction.  (See ECF No. 31.)

On January 6, 2025, Plaintiff filed the instant Motion.  (ECF No. 32.)

II.    **LEGAL STANDARD**

In making its attorneys' fees determination, the Court first looks to see if the moving party

is entitled to attorneys' fees.  See Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v.

Grandview Raceway, 46 F.3d 1392, 1400 (6th Cir. 1995).  If so, the Court then uses its discretion

to determine a reasonable amount of fees.  See id.; First Merit Bank v. J&B Prods., Ltd., No. 15-

cv-13548, 2016 WL 7385714, at *1 (E.D. Mich. Dec. 21, 2016) ("Having determined that

consideration of attorneys' fees is appropriate at this stage, the next issue is whether the fees sought

by Plaintiff's counsel are reasonable.")

III.    **ANALYSIS**

The Court thus examines Plaintiff's request for attorneys' fees per the two step standard.

See Grandview Raceway, 46 F.3d at 1400.  The Court then considers Plaintiff's request for costs

4

and post-judgment interest.  (See ECF No. 32-1 at PageID 242; ECF No. 32-2 at PageID 246; ECF

No. 32 ¶ 12.)

### A.    Entitlement to Attorneys' Fees

Plaintiff argues it is entitled to attorneys' fees pursuant to its claims under the Lanham Act,

15 U.S.C. § 1117(a), and for breach of contract.  (See ECF No. 32 at PageID 234–35.)  The Court

addresses each in turn.

#### i.    Lanham Act

"Under 15 U.S.C. § 1117(a), a district court may award reasonable attorney fees to the

prevailing party in 'exceptional' cases."  Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th

Cir. 2004).  A case is "exceptional" when "the infringement was malicious, fraudulent, willful, or

deliberate."  Id. (citing Hindu Incense v. Meadows, 692 F.2d 1048, 1051 (6th Cir. 1982)).

Plaintiff argues this is an exceptional case because Defendants used Plaintiff's marks over

the course of a year, causing likely confusion for customers, and refused to terminate their use of

the marks after an arbitrator ordered Defendants to do so.  (See ECF No. 32 at PageID 235–36.)

The Court finds Plaintiff's argument persuasive.  Defendants continued to use Plaintiff's

marks after the termination of the Agreement.  (See ECF No. 1 ¶ 48–49.)  Furthermore, Defendants

knew they did not have permission to continue to use Plaintiff's marks, as Plaintiff provided

Defendants with notice and took Defendants to arbitration.  (See id. ¶¶ 41, 43, 48.)  In this context,

the Court concludes Defendants' continued use of Plaintiff's marks is, at minimum, deliberate.

See Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852, 854 (E.D. Mich. 2006) (finding the

defendants' trademark infringement to be deliberate where they continued to use the plaintiff's

marks despite receipt of notice that their actions were unauthorized).  Thus, Plaintiff is entitled to

attorneys' fees under the Lanham Act.  See Eagles, 356 F.3d at 728.

> ii.    *Breach of Contract*

Even if Plaintiff is not entitled to attorneys' fees under the Lanham Act, it is entitled to attorneys' fees under its claim for breach of contract. The License Agreement expressly provides for attorneys' fees to the prevailing party in any potential arbitration or court proceeding. (See ECF No. 1-2 at PageID 49, 53.) Plaintiff is the prevailing party in both the arbitration and the instant action before the Court. (See ECF Nos. 1-4 (Award of Arbitrator), 31 (Order Granting Permanent Injunction and Motion for Default Judgment).) Thus, Defendants are "liable for reasonable attorney fees." See Bank of the Ozarks v. Perfect Health Skin & Body Ctr. PLLC, No. 1:18-cv-11870-TLL-ptm, 2019 WL 3388465, at *5 (E.D. Mich. July 26, 2019).

**B.    Reasonable Amount of Attorneys' Fees**

"It is well settled that the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees." Grandview Raceway, 46 F.3d at 1401 (citations omitted). The lodestar approach multiplies the "number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Id. While there is a strong presumption that the lodestar calculation is a reasonable fee, the Court may factor in other considerations to adjust the fee. Id. at 1401–02.

Plaintiff states it has incurred $45,349.50 in attorneys' fees. (ECF No. 32 at PageID 236.) In support of its Motion, Plaintiff attaches declarations of its counsel John Doroghazi ("Doroghazi") and Connor Blair ("Blair"), as well as a supporting declaration of Daniel Oates ("Oates"), a third party attorney familiar with national billing rates in franchising law. (See ECF Nos. 32-1 (Doroghazi Decl.), 32-2 (Blair Decl.), 32-4 (Oates Decl.).)

Plaintiff's counsel spent its time on the case as follows:

| Timekeeper | Hours | Hourly Rate | Total |
|---|---|---|---|
| John Doroghazi (Partner—Wiggin & Dana LLP ("Wiggin")) | 13.90 | $595.00 | $8,270.50 |
| Michael Kucharski (Associate—Wiggin) | 46.30 | $475.00 | $21,992.50 |

| | | | |
|---|---|---|---|
| Connor Blair (Partner—Bradley Arant Boult Cummings LLP ("Bradley")) | 24.10 | $595.00 | $14,339.50 |
| Matthew DeAntonio (Partner—Bradley) | 0.70 | $570.00 | $399.00 |
| Adam Williams (Associate—Bradley) | 0.80 | $435.00 | $348.00 |
| TOTAL | 85.8 | | $45,349.50 |

(See ECF No. 32-1 at PageID 242; ECF No. 32-2 at PageID 246.)

As part of the lodestar calculation, the Court examines the reasonableness of both the hours expended on the matter and as the hourly rate. See Grandview Raceway, 46 F.3d at 1401. The Court addresses each in turn.

> i.    *Reasonable Hours Expended*

The attorneys from Wiggin spent a total of 60.2 hours on the case. (ECF No. 32-1 at PageID 242.) The attorneys from Bradley spent a total of 25.6 hours on the case. (ECF No. 32-2 at PageID 246; ECF No. 32-3 at PageID 248.) This totals 85.8 hours.

Plaintiff argues the hours expended are reasonable. (See ECF No. 32-1 at PageID 242; ECF No. 32-2 at PageID 246.) In their declarations, Plaintiff's counsel state they did the following in the case:

1) Reviewed the factual materials in support of the Complaint;
2) Prepared (Wiggin attorneys) and reviewed for compliance with the Local Rules (Bradley attorneys) the Complaint;
3) Drafted (Wiggin attorneys) and reviewed for compliance with the Local Rules (Bradley attorneys) the Motion for Preliminary Injunction;
4) Drafted (Wiggin attorneys) and reviewed for compliance with the Local Rules (Bradley attorneys) the Motion for Default and supporting declaration;
5) Sent and served various filings on Defendants;
6) Drafted (Wiggin attorneys) and reviewed for compliance with the Local Rules (Bradley attorneys) the Motion for Default Judgment and accompanying papers;
7) Reviewed and sponsored motions for pro hac vice (Bradley attorneys); and
8) Attended and argued the Motion for Default Judgment in front of the Court.

(ECF No. 32-1 at PageID 242; ECF No. 32-2 at PageID 245–46.)

Plaintiff's counsel, however, does not attach a log of their hours. (Cf. ECF No. 32-1; 32-2.) Accordingly, it is "difficult 'to determine what discrete tasks each attorney completed, how

much time they spent on each task, and whether their time is redundant.'" See Hubbell v. FedEx

SmartPost, Inc., 933 F.3d 558, 575 (6th Cir. 2019).  Indeed, "[t]he documentation offered in

support of the hours charged must be of sufficient detail and probative value to enable the court to

determine with a high degree of certainty that such hours were actually and reasonably expended

in the prosecution of the litigation."  United Slate, Tile & Composition Roofers, Damp &

Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502

n.2 (6th Cir. 1984); see also L.R. 54.1(b)(1)) (a motion for attorneys' fees must be supported by

"an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect

of the case").  "Where the documentation is inadequate, the district court may reduce the award

accordingly."  Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 553 (6th Cir. 2008) (citing

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

    The Court thus reduces the number of hours by 20%, from 85.8 hours to 68.64 hours.  See

Chrapliwy v. Uniroyal, Inc., 583 F. Supp. 40, 48 (N.D. Ind. 1983) (finding a 20% reduction in

compensable hours appropriate to "eliminate the possibility of duplication or unreasonable hours,

as well as resolve the ambiguities arising from [the plaintiff's] inadequate records"); cf. Hubbell,

933 F.3d at 575 (finding no abuse of discretion where the district court reduced the number of

compensable hours by 35% "due to the lack of specificity and duplication in the attorneys' billing

records").

### ii.    Reasonable Hourly Rate

    Plaintiff's counsel's hourly rates range from $435 to $595 per hour.  (See ECF No. 32 at

PageID 237.)

    Plaintiff argues the hourly rates are reasonable.  (See ECF No. 32-1 at PageID 242; ECF

No. 32-2 at PageID 246.)  In support, Plaintiff points to the Oates declaration.  (See ECF No. 32

at PageID 236.)   Oates reviewed the rates charged and avers the rates are "reasonable and appropriate for the type of work performed, their skills, and are reflective of the general rates charged across the franchise bar."  (ECF No. 32-4 at PageID 251.)

The Court finds the hourly rates are reasonable.   The lodestar calculation must reflect "prevailing rates in the relevant community," where a "prevailing market rate" is one that is typically "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Thomas v. Schroer, No. 2:13-cv-02987-JPM-cgc, 2020 WL 13336786, at *3 (W.D. Tenn. Sept. 2, 2020) (McCalla, J.) (citing Perdue v. Kenny A., 559 U.S. 542, 551 (2010); Blum v. Stenson, 465 U.S. 886, 895 (1984)).  As detailed in the Oates declaration, the hourly rates of Plaintiff's counsel are "reasonable and appropriate" given the firms' skill in franchise law and the type of work performed.  (See ECF No. 32-4 at PageID 251.)  Furthermore, the rates are "reflective of the general rates charged across the franchise bar." (Id.)  Thus, Plaintiff's counsel's hourly rates are reasonable.  See Thomas, 2020 WL 13336786, at *3 (finding hourly rates to be reasonable based on declarations of the attorneys involved and on the declaration of a third party attorney familiar with the specialized area of law).

### iii.      Lodestar Conclusion

After adjusting the hours expended, the Court finds both the hours expended and hourly rates of Plaintiff's counsel are reasonable.  See supra Section III.B.i–ii.  In this context, the Court **GRANTS** Plaintiff's request for attorneys' fees.  See Grandview Raceway, 46 F.3d at 1400.

The Court calculates a reasonable award of attorneys' fees by multiplying the hours expended by the hourly rates.  See id.  The Court reduced the hours expended by 20%, to 68.64 hours.  See supra Section III.B.i.  This 20% reduction is applied evenly across all counsel.  Thus, the Court finds Plaintiff is entitled to $36,279.60 in attorneys' fees.

9

Furthermore, the Court finds no other considerations, such as the results obtained or level of success, justify adjusting the fee.  See Hensley, 461 U.S. at 433.

### C.    Costs

Plaintiff moves the Court to award $2,052.48 in costs, which it avers comes from filings fees and "other associated costs."  (See ECF No. 32-1 at PageID 242; ECF No. 32-2 at PageID 246.)  The Court **DENIES** this request, as Plaintiff did not file a cost bill with the Clerk of Court within thirty days of termination of the case.  See L.R. 54.1(a).

### D.    Post-Judgment Interest

Plaintiff moves the Court to award post-judgment interest.  (ECF No. 32 ¶ 12.)  The Court **GRANTS** Plaintiff's request pursuant to the language of 28 U.S.C § 1961, which allows "interest . . . on any money judgment in a civil case recovered in a district court."  The interest rate is set at "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  Id.  While Plaintiff avers this interest rate is 4.17%, it is 4.22%.  See Federal Reserve, H.15 Selected Interest Rates Table, https://perma.cc/RB5Q-BX9S.

## IV.    CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART** and **DENIED IN PART**.  Defendants shall pay (1) $36,279.60 in attorneys' fees; and (2) post-judgment interest pursuant to 28 U.S.C. § 1961, set at 4.22%, on the amount set forth in this order.

**IT IS SO ORDERED**, this the 11th day of April, 2025.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE